KAREN P. HEWITT
United States Attorney
STEWART M. YOUNG
Assistant U.S. Attorney
California State Bar No. 234889
United States Attorney's Office
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6228

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE LUIS SALDANA-RODRIGUEZ,<br><br>Defendant. | CRIMINAL CASE NO. 3:08-CR-2104 L<br><br>DATE: July 21, 2007<br>TIME: 2:00 P.M.<br><br>GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTIONS<br><br>[13-1] TO SUPPRESS STATEMENTS;<br>[13-2] TO SEVER COUNT 1 FROM COUNTS 2-7;<br>[13-3] TO COMPEL DISCOVERY AND PRESERVE EVIDENCE; AND<br>[13-4] TO GRANT LEAVE TO FILE FURTHER MOTIONS.<br><br>TOGETHER WITH A STATEMENT OF THE FACTS AND THE MEMORANDUM OF POINTS AND AUTHORITIES, AND GOVERNMENT'S MOTIONS FOR:<br><br>(1) RECIPROCAL DISCOVERY |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Stewart M. Young, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's Motions to Suppress Statements, to Sever Counts, to Compel Discovery, and its Motion for Reciprocal Discovery. This response and motion is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

# I

## STATEMENT OF THE CASE

On June 24, 2008, the Government filed a seven-count indictment charging Jose Luis Saldana-Rodriguez ("Defendant") with three counts of violating 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2, bringing an alien into the United States for financial gain and aiding and abetting, and three counts of violating 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (v)(II), transportation of an alien, as well as another count of transporting an alien. On June 24, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty.

# II

## STATEMENT OF FACTS

On June 6, 2008, around 5:00 a.m., Border Patrol Agent Maurilio Vargas received a call from a scope operator of a large group of individuals running north in an area known as "East Smuggler's." The area of "East Smuggler's" is located approximately 3 miles west of the San Ysidro, California, Port of Entry and about 200 yards north of the United States/Mexico international boundary. Agent Vargas responded to the area and encountered twenty-two individuals attempting to conceal themselves in dense brush. Agent Vargas observed that members of the group were wearing what appeared to be socks over their shoes. Agent Vargas identified himself as a Border Patrol agent and performed an immigration inspection. Every person, including defendant, admitted to being a citizen and national of Mexico, and not in possession of documents allowing him or her to enter or remain in the United States. At around 5:42 a.m., all twenty-two individuals were transported to the Imperial Beach Border Patrol Station for processing. At that station, it was discovered that defendant had a prior smuggling arrest for the day before, June 5, 2008.

A. Defendant's Statements

On June 6, 2008, a little more than an hour after being transported to the Border Patrol Station, agents read defendant his Miranda rights. Defendant elected to answer questions post-Miranda. Defendant admitted that he was a citizen of Mexico and that he did not have legal immigration documents that would allow him to stay in the United States legally. He admitted that on that day he crossed the fence. He admitted that "today my part was only to get there to San Diego . . . [and] I was

going to be in charge of . . . if we got there, of getting these people from there, from San Diego, to Los Angeles." He admitted that the day before, on June 5, 2008, he was caught in San Clemente driving a car with 6 undocumented aliens. He stated that for that day, he was hired by a person called Tony to drive the car and that Tony was going to pay him $200. He also admitted he was going to take those people to Los Angeles on June 5, 2008.

Regarding the event on June 6, 2008, defendant stated that instead of twenty-two individuals, there were actually "around 35" and that he was one of the ones at the end (of the group). He stated that he was there "as an alien" and that he "wasn't going to be charged, . . . but [] was going to be crossed." He stated that the smugglers "weren't going to charge[] me" and further explained that "Tony is like a person in charge" and "he's the one who . . . pays me." Defendant further explained that there was another boss over Tony, and that Tony was the person who paid defendant. He stated where the group of people were going to be taken once they had been picked up, and then he further stated that he was a smuggler himself.

One material witness, Martha Reyna-Giles, explained that she crossed with a large group and that she was paying between $2400 and $2500 to be smuggled to Los Angeles. She further stated that while she did not know defendant's role on the June 6, 2008 event, he was the driver that was taking her to Los Angeles on June 5, 2008.

## III

## DEFENDANT'S STATEMENTS SHOULD NOT BE SUPPRESSED

Defendant moves to suppress any statements taken in violation of Miranda v. Arizona, 396 U.S. 868 (1969) and claims that the Government must prove that Defendant's waiver of his Miranda rights were voluntary, knowing and intelligent. First, the rights given to Defendant were plain and unambiguous. And the Miranda advisal and the post-arrest statement were video recorded. Attached to this response is a copy of the transcript of the recorded interview taken on June 6, 2008. Given this, an evidentiary hearing in this case is simply unnecessary and a waste of judicial resources.

### A. The Government Properly Mirandized Defendant.

In this case, Miranda warnings preceded custodial interrogation of Defendant. Attachment A, pages 1-3 include the entire rights colloquy for the defendant. Indeed, when a person has been deprived

of his or her freedom of action in a significant way, Government agents must administer Miranda warnings prior to questioning the person. Miranda v. Arizona, 384 U.S. 436 (1966). Such a requirement, however, has two components: (1) custody, and (2) interrogation. Id. at 477-78.

**B. Defendant Waived His Miranda Rights and Agreed to Speak with Agents**

No threats, physical intimidation, or psychological pressure was exerted by the agents to induce Defendant's statements. Hutto v. Ross, 429 U.S. 28, 30 (1976); Townsend v. Sain, 372 U.S. 293, 307 (1963). The transcript of the hearing makes this clear. When asked "At any time . . . during this interview were you threatened?" Defendant's response was, "No." Attachment A, at 14:430-432. When asked, "Could you assure me that all your answers were given freely and voluntarily and that nothing was [] promised to you?" Defendant's response was, "Yes." Id. at 433-437.

According to Davis v. Washington, 512 U.S. 452, 458 (1994), and United States v. Younger, 398 F.3d 1179, 1187 (9th Cir. 2005), officers are free to question a suspect as long as he or she effectively waives the right to counsel. In this case, defendant was asked whether he wanted to speak with agents after being read his Miranda rights. Defendant waived his Miranda rights and agreed to speak to agents.

Defendant's post-arrest statements are admissible because, as demonstrated on the video recorded statement and the transcript, he knowingly, intelligently, and voluntarily waived his Miranda rights. A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the "absence of police overreaching"). Although the totality of circumstances, including characteristics of the defendant and details of the interview, should be considered, improper coercive activity must occur for suppression of any statement. See id. (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); cf. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the

deprivation of food or sleep.") (citations omitted). While it is possible for a defendant to be in such a poor mental or physical condition that they cannot rationally waive their rights (and misconduct can be inferred based on police knowledge of such condition, Connelly, 479 U.S. at 167-68), the condition must be so severe that the defendant was rendered utterly incapable of rational choice. See United States v. Kelley, 953 F.2d 562, 564 (9th Cir.1992) (collecting cases rejecting claims of physical/mental impairment as insufficient to prevent exercise of rational choice).

Here, Defendant was properly advised of his Miranda rights following arrest. Again, as demonstrated on the DVD recording and the transcript, Defendant acknowledged that he understood his rights and agreed to answer questions without the presence of an attorney.

Contrary to Defendant's claim, the totality of the circumstances involved in this case demonstrates that Defendant statements were voluntary, and that he knowingly waived his rights and agreed to speak to agents after being provided the proper warnings. Any allegation to the contrary is inapposite to the plain text of the transcript, and as such, Defendant's motion to suppress his statements should be denied.

Furthermore, no declaration is attached in accordance with the Local Court Rules. Given that defense counsel now has a copy of the interview transcript, if defendant chooses to file an addendum to his motion with a declaration, the United States requests the opportunity to further respond when such a declaration is submitted.

## IV

## COUNT ONE SHOULD NOT BE SEVERED FROM COUNTS TWO THROUGH SEVEN

Defendant argues that count one should be severed from the other counts in the Indictment due to prejudice inherent in the joining of both the June 5, 2008 and June 6, 2008 incidents. According to Fed. R. Crim. P. Rule 8(a), the "indictment may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with the or constitute parts of a common plan or scheme." According to defendant's own admissions, he was to drive aliens in the group to Los Angeles once they got to the stash house (incidentally, a stash house where he knew the actual location). Furthermore, defendant explained that he worked for Tony, that Tony paid him, and that he was getting smuggled in without a

fee on June 6, 2008 because he would drive aliens up to Los Angeles. In the previous incident, on June 5, 2008, the defendant was actually driving a group of aliens through a checkpoint, presumably towards the ultimate destination of Los Angeles. Clearly, the two events are of the same or similar character, based on the same act or transaction, and are clearly and definitely connected with or constitute parts of a common scheme or plan. Accordingly, despite defendant's reference to Rule 14, the offenses listed in counts 1-7 are clearly linked, constitute part of a common scheme or plan, and should not be severed.

## V

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY

The United States intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act, 18 U.S.C. § 3500, and Rule 16 of the Federal Rules of Criminal Procedure. Thus far, the United States has produced 150 pages of discovery and a compact discs of statements. Defendant's specific requests are addressed below.

**(1) The Defendant's Statements**

The United States recognizes its obligation under Rule 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The United States has produced all of Defendant's oral and written statements that are known to the undersigned Assistant U.S. Attorney at this date and all available compact discs. If the United States discovers additional written or oral statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The United States has no objection to the preservation of the handwritten notes taken by any of the United States' agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the United States objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and

a report). The United States is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined under 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendants that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to the Defendants.

**(2) Arrest Reports, Notes and Dispatch Tapes**

The United States has provided the Defendant with arrest reports, including arrest reports for both the June 5th and June 6th incidents. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be provided as part of Rule 16 discovery. The United States is unaware of any dispatch tapes regarding Defendant's apprehension, but has requested the Border Patrol to preserve these if they do exist. If the United States becomes aware of such dispatch tapes, and those tapes fall under Rule 16 discovery obligations, the United States will provide those tapes.

**(3) Brady Material**

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to either of the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a

constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(4) Sentencing Information**

Defendant claims that the United States must disclose any information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect defendant's guideline ranges, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Additionally, the United States is unaware of any cooperation, or even

attempted cooperation, provided by Defendant. Accordingly, Defendant's demand for this information is premature.

**(5) Defendant's Prior Record**

The United States will provide the Defendant with a copy of his criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

**(6) Proposed 404(b) and 609 Evidence**

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendant with official notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed.

**(7) Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

**(8) Preservation of Evidence**

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules. However, the United States objects to any blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or intended for use by the United States as evidence in chief at trial, or obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and his investigators and will comply with any request for inspection.

**(9) Tangible Objects**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or intended for use by the United States as evidence during its case-in-chief at trial, or obtained from or belongs to Defendant. The United States need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(10) Evidence of Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(11) Impeachment Evidence**

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

**(12) Criminal Investigation of Government Witness**

Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The United States will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief. When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(13) Evidence Affecting Perception, Recollection, Communication or Truth-Telling**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling.

**(14) Witness Addresses**

The United States has provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant for both the June 5, 2008 incident and the June 6, 2008 incident. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the United States will provide Defendants with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The United States objects to any request that it provide a list of every witness to the crimes charged who will not be called as a United States witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The United States is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendants. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(15) Name of Witnesses Favorable to the Defense**

The United States objects to any request that it provide a list of every witness to the crimes charged who will not be called as a United States witness. The United States has stated that it will comply with the request for its witness list before trial. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial

"far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The United States is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendants. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady). The United States will also comply with its discovery obligations regarding any exculpatory evidence that it might become aware of regarding the defendant. But absent these obligations, the United States is unaware of any witness that may be favorable to the defendant.

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

**(16) Statements Relevant to the Defense**

The United States will continue to comply with its obligations under Brady, Jencks, Giglio, and Rule 16, as pertains to any statement relevant to the defense. However, the United States objects to the broad nature of this request for "any statement that may be 'relevant to any possible defense or contention.'"

**(17) Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a United States witness has testified on direct examination, the United States must give the Defendant any "statement" (as defined by the Jencks Act) in its possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the United States is only required to produce all Jencks Act material after the witness testifies, the United States plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

Additionally, no witness who testified before the grand jury will testify at trial, so the United States does not anticipate that it will have to provide any of the Grand Jury transcripts to Defendant.

**(18) Giglio Information**

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

**(19) Agreements Between the Government and Witnesses**

The United States is unaware of any agreement between it and any cooperating witnesses, who have committed crimes, but were not charged, so that they may testify for the Government in this case. The United States will comply with all of its obligations under Brady, Giglio, Jencks Act, and Rule 16, regarding any potential cooperating witness, including any of the material witnesses. Again, at this time, the United States is unaware of any agreement between any of these potential witnesses, but will provide any relevant and pertinent information if such an agreement arises.

**(20) Informants and Cooperating Witnesses**

If the Government determines that there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's identity to the Court for in-chambers inspection. See Roviaro v. United States, 353 U.S. 53, 60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997). The United States has already stated it will comply with its Brady, Giglio, Jencks Act, and further Rule 16 discovery obligations. The United States will comply with the structure of Roviaro if it determines that any confidential informant information is "relevant and helpful to the defense of [the] accused, or is essential to the fair determination of a cause." Roviaro, 353 U.S. at 60.

As the Court is aware, the Supreme Court has declined to adopt an absolute rule requiring disclosure of an informant's identity whenever it is relevant or helpful to a defendant's case. See Roviaro v. United States, 353 U.S. at 62. Indeed, as the D.C. Circuit stated in United States v. Skeens, 449 F.2d 1066, 1071 (D.C. Cir.1971), a "heavy burden ... rests on an accused to establish that the identity of an informant is necessary to his defense." Id. at 1070. "Mere speculation" that an informant's testimony may assist the defendant is not sufficient to meet this burden. United States v. Mangum, 100

F.3d 164, 172 (D.C. Cir.1996). In determining whether the Defendant has met this burden, the Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense," all the while "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, 353 U.S. at 62. The United States will comply with its Rovario obligations, but it also requests that any information provided to the Defendants be subject to in camera review by the Court.

**(21) Bias by Informants or Cooperating Witnesses**

As stated in Section III(12), the United States is unaware of any evidence indicating that any prospective witness, whether Government agent, Informant, or Cooperating Witness, is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses, whether Government agent, Informant, or Cooperating Witness, have a motive to falsify or distort testimony. It will comply with its Giglio obligations if it becomes aware of any indication of bias on behalf of any of these witnesses.

**(22) Government Examination of Law Enforcement Personnel Files - Henthorn Evidence**

Again, as stated previously in this Response, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(23) Reports of Scientific Tests or Examination**

The United States will provide the results of any reports of scientific tests or examinations, should any be conducted. Additionally, United States will provide any expert summaries in a timely fashion prior to trial. At this time, the United States is aware of no tests or examinations which are material to the preparation of the defense or are intended for use by the United States at trial.

**(24) Residual Request**

The United States has already complied with Defendant's request for prompt compliance with its discovery obligations prior to Indictment. The United States will continue to comply with all of its discovery obligations, but objects to the broad nature of Defendant's further discovery requests.

//

## VI

## NO OPPOSITION TO DEFENDANT'S REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

The United States does not object to the granting of leave to allow Defendants to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

## VII

## MOTION FOR RECIPROCAL DISCOVERY

The United States hereby moves for reciprocal discovery from the Defendant. To date Defendant has not provided any. The United States, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requests that Defendant permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which Defendant intends to introduce as evidence in their case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which Defendant intend to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendants intend to call as a witness. Because the United States will comply with Defendant's request for delivery of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure. The United States also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled.

In addition, Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except a statement made by Defendant. This rule thus provides for the reciprocal production of Jencks statements. The time frame established by the rule requires the statement to be provided after the witness has testified. To expedite trial proceedings, the United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a

reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

**VIII**

**CONCLUSION**

For the above stated reasons, the United States respectfully submits its Response and Opposition to Defendant's Motions for Discovery, and requests that its Motion for Reciprocal Discovery be granted.

DATED: July 18, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

s/Stewart M. Young
STEWART M. YOUNG
Assistant U.S. Attorney
Email: stewart.young@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE LUIS SALDANA-RODRIGUEZ,<br>Defendants. | Criminal Case No. 3:08-CR-2104 L<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, Stewart M. Young, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the United States' Response and Opposition to Defendant's Motions and the Government's Motion for Reciprocal Discovery on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Robert Henssler, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 18, 2008.

s/ *Stewart M. Young*
Stewart M. Young

APPENDIX A - TRANSCRIPT OF DEFENDANT'S JUNE 6, 2008 RECORDED INTERVIEW

SOUTHERN DISTRICT OF CALIFORNIA

U.S. ATTORNEY'S OFFICE

**FORENSIC BILINGUAL**
**TRANSCRIPTION AND TRANSLATION**

**Interview on Digital Video File**

# US V. SALDANA-RODRIGUEZ
# 08CR2104

Prepared for Assistant U.S. Attorney Stewart Young

Certified by Carlos M. Izquierdo, USCCI
Language Specialist and Chief Interpreter
U.S. Attorney's Office

| **SUMMARY** |
| --- |
| Jose Luis Saldana-Rodriguez, a defendant in an alien smuggling case, is interviewed in Spanish. The interview, which is reproduced on a DVD, is transcribed and translated below.<br>The numbers in the middle column reflect the time as played back on Start-Stop Powerplay. |

**LEGEND**

| | |
| --- | --- |
| SAL: | DEFENDANT JOSE LUIS SALDANA-RODRIGUEZ |
| NAV: | BORDER PATROL AGENT JESUS NAVA |

| | |
| --- | --- |
| [IA]: | INAUDIBLE |
| [UI]: | UNINTELLIGIBLE |
| [PH]: | PHONETIC |
| /: | Two or more words separated by a "/" are options, due to lack of clarity or specificity in the original language. |
| [ ]: | Text within brackets are inserts by the translator to aid in comprehension. After "you", [*pl*] indicates the plural form used in Spanish. |
| ...: | Pause in utterance. Unfinished or interrupted. |

| | |
| --- | --- |
| ***Italics:*** | ***Source language is English*** |
| **Normal Font:** | **Source language is Spanish** |

***Some words in the English translation may have been purposely distorted and/or grammatical errors created, so as to reflect Spanish language errors or deficiencies. These words are some times followed by the notation "[sic]."***

I, Carlos M. Izquierdo, certified by the ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, under Certificate Number 95-041, as qualified for translating court proceedings in Spanish, declare that, to the best of my ability, on or about July 18th, 2008, in San Diego, CA, I corrected and certified the transcription in Spanish and translation into English of the interview found on the recording, whose full contents appear below.

___________________________________

Carlos M. Izquierdo

Chief Interpreter; U.S. Attorney's Office, San Diego, CA

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| *The following is a statement under oath before Border Patrol Agent Jesus Nava, witnessed by Border Patrol Agent Enmanuel Blanco, at the Imperial Beach Border Patrol Station, in Imperial Beach, California. The statement is being given by defendant Jose Luis Saldana-Rodriguez in the case of United States vs. Jose Luis Saldana-Rodriguez. The date is June 6, 2008, and the current time is 7:03 a.m. Both agents are in plain clothes and no weapons are visible.* Señor, ¿quiere hablar conmigo en inglés o en español? | 00:00:02 | **NAV** | *The following is a statement under oath before Border Patrol Agent Jesus Nava, witnessed by Border Patrol Agent Enmanuel Blanco, at the Imperial Beach Border Patrol Station, in Imperial Beach, California. The statement is being given by defendant Jose Luis Saldana-Rodriguez in the case of United States vs. Jose Luis Saldana-Rodriguez. The date is June 6, 2008, and the current time is 7:03 a.m. Both agents are in plain clothes and no weapons are visible.* Sir, do you want to speak with me in English or in Spanish? |
| En español. | | **SAL** | In Spanish. |
| ¿En Español? | | **NAV** | In Spanish? |
| [Clears throat] | | **SAL** | [Clears throat] |
| Señor, los siguientes avisos de derechos y sus declaraciones están siendo grabadas en audio y video. ¿Entiendes? ¿Sí? | | **NAV** | Sir, the following notifications of rights and your statements are being recorded in audio and video. Do you understand? Yes? |
| Sí. | | **SAL** | Yes. |
| ¿Está usted bajo la influencia de drogas, alcohol o medicinas en este momento? | 00:00:51 | **NAV** | Are you under the influence of drugs, alcohol or medicine at this time? |
| No. | | **SAL** | No. |
| ¿No? ¿Cómo -cómo está su salud mental y física? | | **NAV** | No? How -how is your mental and physical health? |
| Bien. | | **SAL** | Fine. |
| ¿Está bien? | | **NAV** | You're fine? |
| Física, no -no sé. Mental, sí. | | **SAL** | Physically, I don't -I don't know. Mentally, yes. |
| Okey. Le voy a leer sus derechos, ah, del consular [sic]. ¿Okey? | | **NAV** | Okay. I'm going to read you your rights, uh, of the consular [sic]. Okay? |
| Sí. | | **SAL** | Yes. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| "Como no es ciudadano de los Estados Unidos, al ser arrestado o detenido, tiene el derecho a pedirnos que notifiquemos a los consulares representantes de su país aquí en los Estados Unidos, si lo desea. Entre otras cosas, un funcionario consular de su país puede ayudarle a obtener asesoramiento legal, ponerse en contacto con su familia y visitarlo en la cárcel. Si usted desea que notifiquemos a los funcionarios consulares de su país, puede solicitarlo ahora o en cualquier oportunidad en el futuro. Después de que se haya notificado a los funcionarios consulares de su país, ellos podrán llamarle o visitarlo". ¿Entiende? | 00:01:24 | **NAV** | "Since you're not a citizen of the United States, upon being arrested or detained, you have the right to ask us to notify your country's consular representatives here in the United States, if you wish. Among other things, a consular official from your country can help you to obtain legal advice, contact your family and visit you in jail. If you wish for us to notify your country's consular officials, you can request it now or at any opportunity in the future. After your country's consular officials have been notified, they will be able to call you or visit you." Do you understand? |
| Sí. | | **SAL** | Yes. |
| ¿Quiere contactar los -los consulados... | | **NAV** | Do you want to contact the -the consulates... |
| Sí. | | **SAL** | Yes. |
| ... con... ¿Sí? [ui]. Ahora no puede contactarlo porque estamos haciendo la entrevista, pero cuando acabemos nos... ah, hacemos el intento a -a llamarle. | 00:02:05 | **NAV** | ... con... Yes? [ui]. You can't contact it/him now because we're doing the interview, but when we're finished we... uh, we'll make the attempt to -to call it/him. |
| Okey. | | **SAL** | Okay. |
| ¿Entiende? *Subject stated he does want to speak to the consular officer, but it was explained to him that he will be able to contact after the interview is over.* Antes de que le hagamos, ah, cualquier pregunta, usted debe de comprender sus derechos. Usted tiene el derecho de guardar silencio. ¿Entiende? | | **NAV** | Do you understand? *Subject stated he does want to speak to the consular officer, but it was explained to him that he will be able to contact after the interview is over.* Before we ask you, uh, any questions, you must understand your rights. You have the right to remain silent. Do you understand? |
| Sí. | | **SAL** | Yes. |
| Cualquier cosa que usted diga puede ser usada en su contra en un juzgado de leyes o en cualquier procedimiento administrativo o de Inmigración. ¿Entiende? | | **NAV** | Anything you say can be used against you in court of law or in any Immigration or administrative proceedings. Do you understand? |
| Sí. | | **SAL** | Yes. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| Usted tiene el derecho de hablar con un abogado para que le aconseje antes de que le hagamos alguna pregunta y de tenerlo presente con usted durante las preguntas. ¿Entiende? | 00:03:12 | **NAV** | You have the right to speak with an attorney so that he can advise you before we ask you any questions and to have him present with you during the questions. Do you understand? |
| Sí. | | **SAL** | Yes. |
| Si usted no tiene el dinero para emplear a un abogado, se le puede proporcionar uno antes de que le hagamos alguna pregunta, si usted lo desea. ¿Entiende? | | **NAV** | If you don't have the money to hire an attorney, one can be supplied to you before we ask you any questions, if you wish. Do you understand? |
| Sí. | | **SAL** | Yes. |
| Si usted decide contestar nuestras preguntas ahora sin tener a un abogado presente, siempre trendá [sic] -tendrá usted el derecho de dejar de contestar cuando guste. Usted también tiene el derecho de dejar de contestar cuando guste hasta que pueda hablar con un abogado. ¿Entiende? | | **NAV** | If you decide to answer our questions now without having an attorney present, you will always hrave [sic] -have the right to stop answering whenever you wish. You also have the right to stop answering whenever you wish until you can speak with an attorney. Do you understand? |
| Sí. | | **SAL** | Yes. |
| ¿Entiende usted cada una de los derechos que le he leído? | 00:03:47 | **NAV** | Do you understand everyone of the rights that I have read to you? |
| Sí. | | **SAL** | Yes. |
| Sí. ¿Está usted dispuesto a contestar mis preguntas sin tener a un abogado presente? | | **NAV** | Yes. Are you willing to answer my questions without having an attorney present? |
| Sí. | | **SAL** | Yes. |
| Ah, ¿puede poner aquí sus iniciales? Sus iniciales aquí y su firma aquí. *Subject stated he wants to speak with e... me without a lawyer being present. Time: 7:08.* Anteriormente se le avisó de sus derechos, ah, en los cuales se le preguntó que... | | **NAV** | Uh, could you put your initials here? Your initials here and your signature here. *Subject stated he wants to speak with e... me without a lawyer being present. Time: 7:08.* Previously you were informed of your rights, uh, in which you were asked... |
| [Coughs] | | **SAL** | [Coughs] |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| ... si quería regresar a su país lo más pronto posible. Debe de entender que, eh, esos derechos solamente aplican en procedimientos de Inmigración para sacarlo de los Estados Unidos. Ahora usted debe entender que ha habido un cambio en el cual no se le regresará a su [ui]... a su país en este momento y ahora se le va a procesar para un crimen federal. Usted debe de entender que sus derechos administrativos ya no proceden y ahora solamente considere los derechos criminales que se le acaban de explicar. ¿Entiende lo que se le acaba de explicar? | 00:04:48 | **NAV** | ... if you wanted to return to your country as soon as possible. You must understand that, uh, those rights only apply in Immigration proceedings to take you out of the United States. Now you must understand that there has been a change in which you won't be returned to your [ui]... to your country at this time and now you're going to be processed for a federal crime. You must understand that your administrative rights no longer apply and now consider only the criminal rights that were just explained to you. Do you understand what was just explained to you? |
| Sí. | | **SAL** | Yes. |
| Yo soy un oficial del Departamento de Aduanas, de Pro... de Protección y... Fronteriza de los Estados Unidos, autorizado por la ley para administrar juramentos y tomar testimonios con la relación a la ejecución de las leyes de Inmigración y Naturalización de los Estados Unidos. ¿Está u... usted dispuesto a contestar mis preguntas bajo juramento ahora? | 00:05:31 | **NAV** | I'm an officer of the Department of Customs, of Pro... of Protection and... border of the United States, authorized by law to administer oaths and take statements in relation with the execution of United States Immigration and Naturalization laws. Are yo... you willing to answer my questions under oath now? |
| Sí. | | **SAL** | Yes. |
| Sí. Levante la mano derecha. ¿Jura decir la verdad, la verdad entera y nada más que la verdad, que Dios le ayude? | | **NAV** | Yes. Raise your right hand. Do you swear to tell the truth, the whole truth and nothing but the truth, so help you God? |
| Sí. | | **SAL** | Yes.. |
| Baje su mano. Yo deseo tomar una declaración bajo juramento tocante a su entrada a los Estados Unidos. ¿Entiende? | | **NAV** | Lower your hand. I wish to take a statement under oath concerning your entry into the United States? Do you understand? |
| Sí. | | **SAL** | Yes. |
| ¿Cuál... ¿Cómo se llama usted, su nombre verdadero y... | | **NAV** | What... What's your name, your true name and... |
| José Luis Saldaña Rodríguez. | | **SAL** | Jose Luis Saldana-Rodriguez. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| José Luis Saldaña Rodríguez. | 00:06:17 | **NAV** | Jose Luis Saldana-Rodriguez. |
| Sí. | | **SAL** | Yes. |
| ¿Y alguna vez, ah, José, ha usado usted algún otro nombre? | | **NAV** | And have you ever, uh, Jose, used any other name? |
| No. | | **SAL** | No. |
| ¿Nunca? | | **NAV** | Never? |
| No. | | **SAL** | No. |
| ¿Y de qué país es usted ciudadano? | | **NAV** | And what country are you a citizen of? |
| De México. | | **SAL** | Mexico. |
| ¿En qué fecha nació usted y en dónde nació? | | **NAV** | On what date were you born and where were you born? |
| 26 de febrero. | | **SAL** | February 26. |
| ¿Qué año? | | **NAV** | What year? |
| 81. | | **SAL** | 81. |
| ¿Y en dónde? | | **NAV** | And where? |
| Veracruz. | | **SAL** | Veracruz. |
| ¿Veracruz, México? ¿México? | | **NAV** | Veracruz, Mexico? Mexico? |
| Sí. | 00:07:12 | **SAL** | Yes. |
| ¿Y tiene usted algún documento legal de Inmigración que permitiría a usted permanecer aquí en los Estados Unidos legalmente? | | **NAV** | And do you have any legal Immigration documents that would allow you to stay here in the United States legally? |
| No. | | **SAL** | No. |
| ¿No? ¿Ha sido usted alguna vez ordenado deportado o excluido de los Estados Unidos? | | **NAV** | No? Have you ever been ordered deported or excluded from the United States? |
| No. | | **SAL** | No. |
| ¿No? ¿Nunca -nunca fue... ah, delan... delante un juez? | | **NAV** | No? You never -never went... uh, befo... before a judge? |
| No. | | **SAL** | No. |
| ¿No? Okey. ¿Nomás lo sacaron voluntariamente? | | **NAV** | No? Okay. You were just taken out voluntarily? |
| Sí. | | **SAL** | Yes. |
| ¿Sí? ¿Y cuándo entró usted a -a los Estados Unidos la última vez? | | **NAV** | Yes? And when did you enter the -the United States the last time? |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| M... m... El 24 de mayo del 2003. | 00:08:01 | **SAL** | M... m... May 24 of 2003. |
| [ui]. 24 de mayo del 2003. | | **NAV** | [ui]. May 24 of 2003. |
| [Clears throat] | | **SAL** | [Clears throat] |
| ¿Y cómo entró esa vez? | | **NAV** | And how did you enter that time? |
| Igual, por el -por el cerro. | | **SAL** | The same, through the -through the hills. |
| ¿Ilegalmente? | | **NAV** | Illegally? |
| Ilegalmente. | | **SAL** | Illegally. |
| ¿Brincó una cerca? | | **NAV** | You jumped a fence? |
| Sí. | | **SAL** | Yes. |
| Okey. Ah... ¿Y cómo entró usted a los Estados Unidos esta última vez? | | **NAV** | Okay. Uh... And how did you enter the United States this last time? |
| ¿Esta última vez? Apenas iba a intentar. | | **SAL** | This last time? I was about to try. |
| ¿Hoy? | | **NAV** | Today? |
| Hoy. | | **SAL** | Today. |
| ¿Esta mañanita? | | **NAV** | Early this morning? |
| Sí. | | **SAL** | Yes. |
| ¿Cómo entró? | 00:09:15 | **NAV** | How did you enter? |
| Pues crucé la -la cerca. | | **SAL** | Well, I crossed the -the fence. |
| ¿Igual? | | **NAV** | The same way? |
| Sí. | | **SAL** | Yes. |
| ¿Ilegalmente? | | **NAV** | Illegally? |
| Ilegalmente. | | **SAL** | Illegally. |
| ¿Y -y qué era su destinación hoy? | | **NAV** | And -and what was your destination today? |
| San Diego. | | **SAL** | San Diego. |
| Muy bien. ¿Y tiene usted alguna, mm... algún miedo de persecurac... de presecuración [sic] o tortura si es removido de los Estados Unidos? | | **NAV** | Alright. Do you have any fears, mm... any fears of persecurat... of persecuration [sic] or torture if you're removed from the United States? |
| Pues, mm, sí. | | **SAL** | Well, mm, yes. |
| ¿Si lo mandamos pa'trás a México tiene -tiene miedo? | | **NAV** | If we send you back to Mexico you're -you're afraid? |
| Sí. | | **SAL** | Yes. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| ¿Sí? ¿De qué? | 00:09:56 | **NAV** | Yes? Of what? |
| Pues a lo... regresar a lo mismo, a la... pobreza, la miseria. | | **SAL** | Well, to the... returning to the same thing, to... poverty, the misery. |
| Okey. Muy bien. ¿Sabía usted que es ile... ele... ilegal cruzar la frontera brincando la cerca, la malla? | | **NAV** | Okay. Alright. Did you know it's ille... elle... illegal to cross the border jumping the fence, the net? |
| Sí. | | **SAL** | Yes. |
| Okey. Muy bien. Okey. Ahora, José, te voy a -te voy a hacer unas preguntas tocante tu entrada hoy y sobre -sobre tu pasado. ¿Me entiendes? | | **NAV** | Okay. Alright. Okay. Now, Jose, I'm going to -I'm going to ask you some questions concerning your entry today and about -about your past. Do you understand me? |
| Sí. | | **SAL** | Yes. |
| Hoy en día, ¿qué era tu -tu, ah... tu parte en -en este... | | **NAV** | Nowadays, what was your -your, uh... your part in -in this... |
| ¿En eso? | | **SAL** | In that? |
| ... e... e... en -en... | | **NAV** | ... i... i... in -in... |
| [Coughs]<br>¿En esa entrada? | | **SAL** | [Coughs]<br>In that entry? |
| ... en esta entrada? | | **NAV** | ... in this entry? |
| Hoy pues mi parte era pues nomás llegar ahí a San Diego. Yo me -me iba a encargar a... de que si llegábamos, a subir la gente de ahí, de San Diego, a Los Angeles. | 00:11:05 | **SAL** | Well, today my part was only to get there to San Diego. I was -I was going to be in charge of... if we got there, of getting these people from there, from San Diego, to Los Angeles. |
| Okey. | | **NAV** | Okay. |
| Es lo que iba... | | **SAL** | That's what I was going... |
| Tú fuistes -tú fuistes agarrado con -con, ah, 22 otras personas. ¿Me entiendes? | | **NAV** | You were -you were caught with -with, uh, 22 other people. Do you understand me? |
| Ajá. | | **SAL** | Ah-hah. |
| Ayer tú fuistes a... agarrado en San Clemente manejando el carro -un -un carro... | | **NAV** | Yesterday you were ca... caught in San Clemente driving the car -a -a car... |
| Un carro. | | **SAL** | A car. |
| ... con 6, ah... 6 induque... | | **NAV** | ... with 6, uh... 6 unducu... |
| Umjú. | | **SAL** | Uh-huh. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| ... indocumentados. ¿Me entiendes? | 00:11:38 | **NAV** | ... undocumented people. Do you understand me? |
| Sí. | | **SAL** | Yes. |
| ¿Me puedes explicar por quién ibas manejando ese -ese... quién te contrató... | | **NAV** | Could you explain to me for whom you were driving that -that... who hired you... |
| [Clears throat] | | **SAL** | [Clears throat] |
| ... para que manejaras ese carro? | | **NAV** | ... to drive that car? |
| Una persona que le dicen Tony. | | **SAL** | A person called Tony. |
| ¿Tony? | | **NAV** | Tony? |
| Sí. | | **SAL** | Yes. |
| [ui]. Tony. ¿Y -y cuánto dinero te iba a pagar Tony ayer? | | **NAV** | [ui]. Tony. And -and how much money was Tony going to pay you yesterday? |
| 200 dólares. | | **SAL** | 200 dollars. |
| 200 dólares. Okey, eso pasó ayer. ¿A dónde ibas a llevar esa gente ayer? | | **NAV** | 200 dollars. Okay, that happened yesterday. Where were you going to take those people yesterday? |
| Ahí a Los Angeles. | | **SAL** | There to Los Angeles. |
| ¿A Los Angeles? | | **NAV** | To Los Angeles? |
| Sí. | 00:12:30 | **SAL** | Yes. |
| Hoy... Vamos a hablar de -de lo que pasó ahora. Fuistes agarrado con 22 personas. ¿A dónde ibas a llevar estas 22 personas? | | **NAV** | Today... Let's talk about -about what happened today. You were caught with 22 people. Where were you going to take these 22 people? |
| No sé dónde nos iba... Yo nunca he cruzado. | | **SAL** | I don't know where we were going to be... I have never crossed. |
| ¿Te iban a llam... te iban a llamar? | | **NAV** | Were they going to cal... were they going to call you? |
| [Voices overlap] | | | [Voices overlap] |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| [ui]... Sí. No, a nosotros nos iba... A no... Yo -yo nunca he cruzado gente. A mí, este... también yo iba en el grupo. Yo iba en el grupo, o sea, yo no -no iba a cruzar la gente. Yo los iba siguiendo a los guía, pero los guía... éramos va... éramos como 35 y pues los demás corrieron, y yo pues no... yo iba hasta los... de los atrás. Yo no iba siguiendo a... | 00:12:56 | **SAL** | [ui]... Yes. No, we were going to be... We... I -I have never crossed people. I, uh... I was in the group too. I was in the group, I mean, I wasn't -I wasn't going to cross the people. I was following the guides, but the guides... we were se... we were around 35 and, well, the others ran, and I didn't... I was at... the ones at the end. I wasn't following... |
| Pero... | | **NAV** | But... |
| ... [ui]. | | **SAL** | ... [ui]. |
| Pero tú eras el contacto para llevar a esta gente para -para -para... | | **NAV** | But you were the contact to take these people to -to -to... |
| Mm, no. El con... Eh, los contactos están allá, no [ui]... bueno, en San Diego. | | **SAL** | Mm, no. The con... Uh, the contacts are there, not [ui]... well, in San Diego. |
| Entiendo eso. | | **NAV** | I understand that. |
| Umjú. | | **SAL** | Uh-huh. |
| Pero tú eres el contacto de -de aquí de -de... para el grupo, para que se... | | **NAV** | But you're the contact here -here... for the group, to... |
| ¿Para? | | **SAL** | For? |
| ... se asegurara que llegaran a la destinación. | 00:13:44 | **NAV** | ... to make sure they arrived at the destination. |
| No. Eran 2 personas más, los que están aquí, los guías. Yo venía ahí pues como -como pollo también. No me iban a cobrar a mí, o sea, pero me iban a pasar. | | **SAL** | No. Two other people, the ones who are here, were the guides. I was there as -as an alien too. I wasn't going to be charged, I mean, but I was going to be crossed. |
| ¿No te iban a cobrar? | | **NAV** | You were not going to be charged? |
| No, por... pues como trabajaba yo con ellos... | | **SAL** | No, bec... well, since I used to work for them... |
| Ajá. | | **NAV** | Ah-hah. |
| ... pues no... | | **SAL** | ... well, I wasn't... |
| Trabajabas con ellos. | | **NAV** | You used to work for them. |
| ... pues no me iban a cobrar, na'más me iban a pasar para allá. | | **SAL** | ... well, they weren't going to charged me, I was only going to be crossed over there. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| Entiendo. Entiendo eso. Pero necesi... Eh, Tony necesitaba contactar a alguien para que se asegurara que su grupo llegara a su -a su destinación. | 00:14:08 | **NAV** | I understand. I understand that. But he nee... Uh, Tony needed to contact someone to make sure his group arrived at its -at its destination. |
| No. Pues... porque Tony es como un encargado. | | **SAL** | No. Well... because Tony is like a person in charge. |
| Ajá. | | **NAV** | Ah-hah. |
| O sea, es -es el que a mí me... pues el que me con... paga a mí. | | **SAL** | I mean, he's -he's the one who... well, the one who con... pays me. |
| ¿Él es el patrón? | | **NAV** | He's the boss? |
| Mm, pues como un encargado. O sea, no -no hay patrón patrón. | | **SAL** | Mm, well, he's like a person in charge. I mean, there's not -there's not a real boss. |
| Oh. | | **NAV** | Oh. |
| El patrón es otra persona. | | **SAL** | The boss is another person. |
| Sí. | | **NAV** | Yes. |
| No -no sé su nombre de él. | | **SAL** | I don't -I don't know his name. |
| ¿El, eh... el patrón? | | **NAV** | [Of] The, uh... the boss? |
| Ajá. | | **SAL** | Ah-hah. |
| No sabes su nombre. | 00:14:39 | **NAV** | You don't know his name. |
| No. [ui]... | | **SAL** | No. [ui]... |
| [Voices overlap] | | | [Voices overlap] |
| Entonces Tony es el que paga el dinero. | | **NAV** | So Tony is the one who pays the money. |
| Sí, eh... Bueno, él es que a mí me paga. | | **SAL** | Yes, uh... Well, he's the one who pays me. |
| Ajá. | | **NAV** | Ah-hah. |
| Él. Y ya a él -a él le pagan también. | | **SAL** | He. And then he -he gets paid too. |
| Oh, okey. Muy bien. ¿Y sabes a dónde iban a llevar a este grupo hoy? | | **NAV** | Oh, okay. Alright. And do you know where this group was going to be taken today? |
| Pues nos iban a recoger a... según, ahí por la playa. No sé. | | **SAL** | Well, we were going to be picked up at... supposedly, there by the beach. I don't know. |
| [ui]... | | **NAV** | [ui]... |
| ¿A dónde iba a llegar? ¿O a dónde nos iban a recoger? | | **SAL** | Where was I going to arrive? Or where were we going to be picked up? |
| ¿A dónde iban a llevar ahora la gente? | | **NAV** | Where were those people going to be taken today? |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| Sí, sí sé. | 00:15:02 | **SAL** | Yes, I do know. |
| ¿Sí sabes? | | **NAV** | You do know? |
| Sí. | | **SAL** | Yes. |
| Muy bien. ¿Y me puedes explicar dónde queda ese lugar? | | **NAV** | Alright. And could you explain to me where that place is? |
| [Clears throat]<br>Sí, está en la -en la Pal [sic] Avenue. | | **SAL** | [Clears throat]<br>Yes, it's on -on Pal [sic] Avenue. |
| ¿Mande? | | **NAV** | What? |
| En la Pal, Par, Avenue. | | **SAL** | On Pal, Par, Avenue. |
| ¿Park? | | **NAV** | Park? |
| Pal, Pal. Algo de como palma. | | **SAL** | Pal, Pal. Something like palm. |
| ¿Palma? ¡Palm! Palm Avenue. | | **NAV** | Palm? Palm! Palm Avenue. |
| Sobre la 4ta. | | **SAL** | On 4th. |
| ¿Palm Avenue y 4ta.? | | **NAV** | Palm Avenue and 4th? |
| Ajá. | | **SAL** | Ah-hah. |
| En *4th?* | | **NAV** | On *4th?* |
| Mm... | | **SAL** | Mm... |
| Es como -como 4ta. | 00:15:32 | **NAV** | It's like -like 4th. |
| Es... No, no. ¿Es qué? [ui] y 4ta. Avenue. Algo así. | | **SAL** | It's... No, no. It's what? [ui] and 4th Avenue. Something like that. |
| Palm Avenue... | | **NAV** | Palm Avenue... |
| Ajá. [ui]... | | **SAL** | Ah-hah. [ui]... |
| ... y 4th Avenue? | | **NAV** | ... and 4th Avenue. |
| *Yeah.* [ui]. | | **SAL** | *Yeah.* [ui]. |
| 4th Avenue? | | **NAV** | 4th Avenue? |
| ¿Te puedo decir algo, o sea, y... no sé, fuera de lo... den... dentro de la entrevista? | | **SAL** | Can I tell you something, I mean, and... I don't know, outside of what... in... in the interview? |
| Pue... puedes hablar aquí. | | **NAV** | You ca... you can talk here. |
| Okey. Cuando me entrevistó la... allá en San Cle... en San Clemente... | | **SAL** | Okay. When the... interviewed me there in San Cle... in San Clemente... |
| En San... Ayer. | | **NAV** | In San... Yesterday. |
| [ui]. Ajá, me entrevistó una persona y me dijo que él sabía que me iban a cruzar otra vez a mí. | | **SAL** | [ui]. Ah-hah, some person interviewed me and told me that he knew that I was going to be crossed again. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| Ajá. | 00:16:01 | **NAV** | Ah-hah. |
| Él me dijo que si yo estaba dispuesto ayudarlos a dar con el lugar donde llega la gente... | | **SAL** | He asked me if I was willing to help them find the place where people arrive at... |
| [ui]. | | **NAV** | [ui]. |
| ... y a... con el -el jefe de todo, y pues yo le dije que sí. Él me dio incluso un teléfono para que yo le llamara. | | **SAL** | ... and to... with the -the boss of everything, and, well, I told him yes. He even gave me a telephone [number] to call him. |
| Mm, muy bien. | | **NAV** | Mm, alright. |
| Por... | | **SAL** | Bec... |
| Muy bien. | | **NAV** | Alright. |
| Porque pues yo no... La... Mm, no tenía trabajo. Me habían ofrecido... Yo sé que es poco dinero 200 dólares... | | **SAL** | Because, well, I didn't... The... Mm, I didn't have a job. I had been offered... I know 200 dollars is little money... |
| Sí. | | **NAV** | Yes. |
| ... pero pues no ten... | | **SAL** | ... but, well, I didn't ha... |
| Muy bien. Pero entiendes que el tráfico de -de -de humanos... | | **NAV** | Alright. But you understand that hu... hu... human trafficking... |
| Sí. | 00:16:30 | **SAL** | Yes. |
| ... es ilegal. | | **NAV** | ... is illegal. |
| Sí. | | **SAL** | Yes. |
| Y -y entiendes que tú estás envuelto en este tráfico de humanos. | | **NAV** | And -and you understand that you're involved in this human trafficking. |
| Sí. | | **SAL** | Yes. |
| Tú tomas -tú to... Tú haz tomado y estás tomando parte... | | **NAV** | You're taking -you're ta... You have taken part and are taking part... |
| Sí. | | **SAL** | Yes. |
| ... en un grupo de -de -de coyotes. | | **NAV** | ... in a group of -of -of smugglers. |
| Sí. | | **SAL** | Yes. |
| ¿Me entiendes? Eres com... eres... ¿Pue... puedes decir que eres coyote? | | **NAV** | Do you understand me? You're com... you're... Cou... could you say you're a smuggler? |
| Mm, pues sí. | | **SAL** | Mm, well, yes. |
| ¿Sí? | | **NAV** | Yes? |
| Sí. | | **SAL** | Yes. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| Okey, muy bien. Ahm, ¿y qué tipo de carro manejan? ¿Qué tipo de carro ibas a esperar ahora? | 00:16:55 | **NAV** | Okay, alright. Uhm, and what type of car do they drive? What type of car were you going to wait for today? |
| Mm, el que nos iba a recoger, no sé. Es que tienen diferentes. Parecía un... | | **SAL** | Mm, the one that was going to pick us up, I don't know. It's just that they have different ones. It looked like a... |
| ¿No te dijeron cuál ibas a esperar? | | **NAV** | You were not told which one you were going to wait for? |
| No. | | **SAL** | No. |
| [ui]. Okey. Perteneces -perteneces a una orgarización [sic] -a ora... organización de contrabando, ¿sí? | | **NAV** | [ui]. Okay. You belong -you belong to a -to a traffic orgarization [sic] -ora... organization, right? |
| Pues sí. | | **SAL** | Well, yes. |
| ¿Sí? ¿Y quién hace los arreglos con la gente? | | **NAV** | Yes? And who makes the arrangements with people? |
| El Tony. | | **SAL** | Tony. |
| ¿El Tony? | | **NAV** | Tony? |
| Tony. Sí. | | **SAL** | Tony. Yes. |
| Eh, ¿'ónde hace los arreglos, eh, aquí en los Estados Unidos o en México? | 00:17:40 | **NAV** | Uh, where does he make the arrangements, uh, here in the United States or in Mexico? |
| No, en Es... aquí en Estados Unidos. | | **SAL** | No, in the Un... here in the United States. |
| Muy bien. ¿Y llevan a la gente a varias diferentes partes? | | **NAV** | Alright. And do they take those people to several different places? |
| No, a un solo lugar. | | **SAL** | No, only to one place. |
| Palm y 4th... | | **NAV** | Palm and 4th... |
| Sí. | | **SAL** | Yes. |
| ... y luego a Los Angeles... | | **NAV** | ... and then to Los Angeles... |
| Umjú. | | **SAL** | Uh-huh. |
| ... y tú sabes las dos destinaciones. | | **NAV** | ... and you know the two destinations. |
| Mm, sí. | | **SAL** | Mm, yes. |
| Pues tienes que saberlas, sí. Ah... ¿Y sí conoces a la persona que te iba a recoger ahora? | | **NAV** | Well, you must know them, yes. Uh... And you do know the person who was going to pick you up today? |
| No. | | **SAL** | No. |
| ¿No? | | **NAV** | No? |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| [Clears throat] No. | 00:18:09 | SAL | [Clears throat] No. |
| Okey. ¿Hay alguna otra persona que te -que -que viene ayudando ahora en -en -en el... | | NAV | Okay. Is there any ther person who -who is helping today in -in the... |
| No sé. | | SAL | I don't know. |
| ... en el grupo? | | NAV | ... in the group? |
| Pues ellos no... Los de aquí de Tijuana no los conozco. | | SAL | Well, they don't... I don't know the ones from here in Tijuana. |
| ¿Que están en tu organización? | | NAV | Who are in your organization? |
| No. | | SAL | No. |
| ¿Que los agarraron? | | NAV | Who were caught? |
| No. | | SAL | No. |
| ¿No? Muy bien. ¿En algún momento de esta... durante esta entrevista fue usted amenazado? | | NAV | No? Alright. At any time in this... during this interview were you threatened? |
| No. | | SAL | No. |
| ¿Me asegura que usted... que todas sus respuestas fueron dadas libres y voluntariamente y que nada se le permiti... prometido? | | NAV | Could you assure me that... that all your answers were given freely and voluntarily and that nothing was permit... promised to you? |
| Sí. | 00:18:52 | SAL | Yes. |
| ¿Y hay alguna otra cosa que usted gustaría agregar o decirme? | | NAV | And is there anything else you would like to add or tell me? |
| Pues no sé, eso. Lo mismo que te di... que te dije hace rato. | | SAL | Well, I don't know, that. The same thing that I to... that I told you a while ago. |
| Muy bien. | | NAV | Alright. |
| De que [ui], este... Pues no sé. Yo no estoy a gusto trabajando así, con eso... | | SAL | That [ui], uh... Well, I don't know. I'm not happy working like that, on that... |
| Muy bien. | | NAV | Alright. |
| ... con lo mismo. [ui]... | | SAL | ... on the same thing. [ui]... |
| [Voices overlap] | | | [Voices overlap] |
| No estás a gusto en tu organización. | | NAV | You're not happy with your organization. |
| No. | | SAL | No. |
| ¿Sabes que es ilegal lo que haces? | | NAV | Do you know that what you do is illegal? |
| Sí, yo sé que es ilegal. | | SAL | Yes, I know it's illegal. |
| Muy bien. | | NAV | Alright. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| Yo estaba buscando trabajo, esta [ui] que este era el último viaje que yo iba a hacer... | 00:19:20 | **SAL** | I was looking for a job, this [ui] that this one was the last trip I was going to make... |
| Ajá. | | **NAV** | Ah-hah. |
| ... pero, ah, ese... el oficial, te digo, me dio teléfono, me dijo... dice: “Yo quiero que tú me ayudes”. Dice: “Yo te voy a ayudar”. Me, este... me dice: “Dic... Dime dónde viven”. Dice: “A ti no te van a...” Dice: “Lo que tú me digas”, dice, “de aquí no va a salir”. | | **SAL** | ... but, uh, that... the officer, I’m telling you, gave me his telephone [number], he told me... he says, “I want you to help me.” He says, “I’m going to help you.” He, uh... he tells me, “Tel... Tell me where they live.” He says, “You’re not going to be... “ He says, “Whatever you tell me,” he says, “it’s not going to get out of here.” |
| ¿Esto fue en la otra estación? | | **NAV** | This was at the other station? |
| En la otra estación. | | **SAL** | At the other station. |
| Okey, en otra estación. | | **NAV** | Okay, in another station. |
| Tengo su número, si no me crees. Lo tengo en la cartera. | | **SAL** | I have his number, if you don’t believe me. I have it in my wallet. |
| Muy bien. ¿Pero sí entiendes que ya aclaramos que el tráfico de humanos... | | **NAV** | Alright. But you do understand that we clarified that the human trafficking... |
| Sí. | 00:19:56 | **SAL** | Yes. |
| ... eh... | | **NAV** | ... uh... |
| Sí, sí. | | **SAL** | Yes, yes. |
| ... es ilegalmente... | | **NAV** | ... of undocumented people... |
| Sí entiendo. | | **SAL** | I do understand. |
| ... de indocumentados? | | **NAV** | ... is illegally [sic]? |
| Sí. | | **SAL** | Yes. |
| Y tú has tomado parte en esto ho... hoy en día. ¿Me entiendes? | | **NAV** | And you have taken part in this to... nowadays. Do you understand me? |
| Sí. | | **SAL** | Yes. |
| Okey. Muy bien. *This concludes the sworn statement. The times is now 7:24 a.m.* | 00:20:05 | **NAV** | Okay. Alright. *This concludes the sworn statement. The times is now 7:24 a.m.* |
| **[End of interview]** | | | **[End of interview]** |
| **[End of transcription]** | | | **[End of translation]** |